POSTED ON WEBSITE

FILED
JUL -2 2015
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 13-13156-B-7
)
)
Roberto Martinez Salgado and )
Sandra Mata Espinoza, )
)
)
Debtors )

**MEMORANDUM DECISION REGARDING CHAPTER 7 TRUSTEE'S APPLICATION FOR PAYMENT OF EXPENSES**

The chapter 7 trustee, James Salven (the "Trustee"), has filed an Application for Payment of Final Fees and Expenses (Doc. No. 28; the "Application"). The Application was not noticed or set for hearing and no objection has been filed to the Application. However, the court has an independent duty to review the Application and make sure it complies with the Bankruptcy Code and applicable rules.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052 and 9014. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 522, and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (E) and (O).

Based on the Trustee's final report ("TFR"), it appears that the Trustee recovered one asset, the Debtors' 2013 tax refund, which was listed on Schedule B in an unknown amount but from which the Trustee recovered and administered

$6,253.74.[1] For his services, the Trustee is requesting fees in the amount of $655.93, and reimbursement of expenses in the amount of $553.58 (the "Expenses"). The court did not question the "fee" portion of the Application and the request for fees is not at issue here.[2] However, the court had concerns about the Trustee's request for reimbursement of expenses. The court therefore issued an order setting the Application for a hearing. In response, the Trustee filed a supplemental declaration in an effort to explain some of the expenses listed in the Application (the "Supplemental Declaration"). The Trustee offered to withdraw two of the expense line items. After the hearing, the court approved the Application insofar as it related to the Trustee's fees, in the amount of $655.93. (*See* Doc. No. 40.) The court took under submission the Trustee's request for Expenses in the amount of $553.58. For the reasons set forth below, the court is compelled to deny the Application insofar as it requests reimbursement of the Expenses.

**Background.** The case was filed April 30, 2013. On June 6, 2013, the Trustee concluded the meeting of creditors and filed a notice of assets. Subsequently, two unsecured claims based on credit card debt were filed for a total of $1,355.95. On July 8, 2013, the court granted the Trustee's motion to employ a broker to sell the Debtors' home, however four days later the Debtors filed amended schedules exempting the equity in their home and leaving their 2013 tax refund nonexempt. The only other action on the docket since then has been the

---

[1] Based on the TFR, the Trustee paid two unsecured claims in full totaling $1,355.95. Surplus funds in the amount of $3,688.28 (after a reserve for administrative expenses) were returned to the Debtors.

[2] The formula for calculating a trustee's fee under § 362(a) is based on "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." Ironically, chapter 7 trustees universally construe "all moneys disbursed to parties in interest" to include the money they disburse to themselves and to their professionals which means they get a fee for paying themselves a fee and reimbursing themselves for expenses.

2

entry of the Debtors' discharge on August 8, 2013. This case was held open for nearly two years while the Trustee administered the Debtors' 2013 tax refund and paid two creditors. Most of the money recovered by the Trustee will be returned to the Debtors. (*See* footnote 1, supra.)

**The Trustee's Application for Expenses.** The court has two concerns with the Expenses. The first relates to the Trustee's practice of averaging and estimating his Expenses. The second relates to the Trustee's practice of charging the estate for items which appear to be the normal overhead costs of running his office and doing business.[3] As the court recognized in *Sousa v. Miguel (In re U.S. Trustee),* 32 F.3d 1370 (1994), the category of reimbursable expenses is broad. The court, quoting *Collier* (2 *Collier on Bankruptcy* (15th Ed.) ¶ 330.06), explained,

> [T]he scale of expenses allowable to trustees may range from the rent indispensable to secure preservation of the debtor's assets to the cost of prizes, barbecue, music and other publicity designed to attract a crowd and induce it to buy what the trustee is anxious to sell. It will cover expenditure incident to an authorized conducting of a business, such as rent, insurance, salaries, wages, costs of merchandise and production, royalties and taxes. In addition, expenses of investigation, litigation, arbitration, settlement and traveling come within the coverage of section 330.

*In re U.S. Trustee,* 32 F.3d at 1336-37.

"This description of expenses illustrates that trustees are entitled to reimbursement for expenses incurred in the administration of a specific estate, not what they generally spend to run their office. *Id.*

*In re U.S. Trustee* cites *In re Williams*, 102 B.R. 197, 199 (Bankr. N.D.Cal. 1989), where that court explained that "an expense is not 'actual,' and therefore not reimbursable under section 330(a)(2), to the extent that it is based on any sort of guesswork, formula, or pro rata allocation. Concrete documentation, in the

---

[3] The court notes that the Trustee is also a licensed CPA who frequently provides professional accounting services to other chapter 7 trustees in cases before this court.

form of receipts and invoices, is therefore necessary to support any application for reimbursement." *Id.* at 1376, fn 3.

The Application listed the Expenses thus:

Trustee Expenses

| | | |
|---|---|---|
| TFR(120) and TDR(60)-est. copy cost (180@.164)) | 1 @ $29.52 | $29.52 |
| Distribution(postage, letter, envelope) | 2 @ $0.69 | $1.38 |
| COPIES | 185 @ $0.17 | $30.53 |
| OTHER | 1 @ $400.00 | $400.00 |
| DOCKET | 1 @ $5.00 | $5.00 |
| CLAIMS REGISTER | 2 @ $0.50 | $1.00 |
| Est. Cost Record Retention (3 years) and Destruction | 1 @ $43.30 | $43.30 |
| Est. Cost of Offsite Review TFR/TDR | 1 @ $42.85 | $42.85 |
| Subtotal Expenses: | | $553.58 |
| Plus Adjustment: | | $0.00 |
| Total Expenses: | | $553.58 |
| Less Previously Paid: | | $0.00 |
| Total Expenses Requested: | | $553.58 |

In his Supplemental Declaration the Trustee endeavored to explain some of the Expenses and offered to withdraw two of them ($405), specifically the Expenses identified as:

| | | |
|---|---|---|
| OTHER | 1 @ $400.00 | $400.00 and |
| DOCKET | 1 @ $5.00 | $5.00[4] |

/ / /

---

[4] The "Other" Expense was described as reimbursement for $400 he paid to the realtor for a market analysis of the Debtors' residence prior to the realtor's employment by the court. The "Docket" Expense was described simply as a "hold over from the past."

4

In addition, the Trustee described the "[c]harge for record retention" as "the *estimated cost* of storage unit (for three years) divided by *estimated number* of 'asset' cases during that period. Number has not changed despite downturn in filings." Likewise, he stated that the "[e]st. cost of Offsite Review is the *estimated average charge* for sending report records for TFR and TDR to offsite review locations. Review process changed from local to offsite." In addition, he explained, the "TFR and TDR is the *estimated paper cost* of producing the reports." Finally, "Copies represents, per review of files, the *estimated number of copies* made during administration." Thus, pursuant to *U.S. Trustee*, even if the Expenses *were* proper, there was no documentation to support any of the Expenses.

At the hearing Robert Hawkins ("Hawkins") appeared on behalf of the Trustee and with little discussion submitted the Application on the record.[5] Hawkins acknowledged that applicable law in the Ninth Circuit does not allow chapter 7 trustees to charge for estimated expenses and office overhead. With regard to the $42.85 Expense item identified as "Est. Cost of Offsite Review TFR/TDR," Hawkins explained that the chapter 7 trustee's final reports ("TFRs") and distribution reports ("TDRs") are no longer reviewed by the U.S. Trustee in the local office, but in San Francisco.

**Section 330(a)(1)(B) Reimbursement of Expenses.** The issue of reimbursable "actual, necessary expenses" under §330(a)(1)(B)[6] was substantially

---

[5]Hawkins is also a chapter 7 trustee who frequently files applications for fees and expenses with this court. To this court's best recollection, Hawkins has never requested reimbursement for expenses of the kind and amounts at issue here, for the administration of a relatively uncomplicated case.

[6]Section 330(a)(1)(B) reads, in pertinent part: "(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee . . . (B) reimbursement for actual, necessary expenses."

5

settled in 1994 when the Ninth Circuit issued its ruling in *In re U.S. Trustee*. In that case, the court put to rest the notion that a chapter 7 trustee's normal overhead costs of operating his or her office could be "averaged" and allocated to each of the trustee's pending asset cases. In addition, while *actual* documented extraordinary office expenses may be reimbursable at the court's discretion, *id.* at 1375, *estimated* expenses are not reasonable necessary actual expenses and are not reimbursable. *Id.* at 1373-74.[7]

In *U.S. Trustee*, the chapter 7 trustee liquidated the available assets for the benefit of the creditors, after which he filed his final report for court approval. The trustee requested, *inter alia*, reimbursement of expenses listed as follows:

| | |
|---|---|
| Postage and meter rental | $22.75 |
| Pacific Telephone | 12.80 |
| Mileage | 9.60 |
| Stationery and supplies | 33.25 |
| Office and equipment | 105.00 |
| Clerical and steno services | 230.00 |
| Copies | 18.60 |
| Total | $432.00 |

*Id.* at 1371.

The trustee acknowledged that he did not contemporaneously document expenses. Instead, he calculated the expenses by using actual and historical data, divided the different costs to arrive at an average, and then allocated that amount to each asset case. For example, the trustee computed the "postage meter rental" charge for a specific case by taking his total monthly rental cost, dividing it by the

---

[7]Notably, the United States Trustee ("UST") vigorously objected to the chapter 7 trustee's expenses in *In re U.S. Trustee* and vigorously prosecuted a successful appeal. Here, the UST has taken no position for or against the Trustee's Application and request for Expenses. It appears, as the court recently noted in *In re Scoggins*, 517 B.R. 206 (Bankr. E.D. Cal. 2014), that the UST has abandoned virtually all responsibility for supervising the compensation which her own trustees are charging to their bankruptcy estates. The UST has essentially punted that responsibility to the parties and to the courts. *Id.* at 215-221.

6

average number of asset cases, and multiplying that figure by the number of months the case was open. Likewise, "Pacific Telephone" charges were determined by dividing the amount of the monthly bill by the number of calls made to arrive at a per-call amount, then multiplying the number of documented and *estimated* calls made in each case. As for "mileage" expenses, the trustee computed the mileage per month on his car, divided that by the number of asset cases, and then multiplied the miles by the number of months the case was open.[8] *Id.* at 1371.

Here, it appears from the record that the Trustee has calculated his Expenses in a similar manner, the practice that was expressly prohibited in *U.S. Trustee*.[9] In addition, the Trustee's Expenses appear to include normal overhead expenses that would be prohibited by the *In re U.S. Trustee* decision, even if they applied specifically to this particular case.

The TFR and TDR copy costs are, both, an overhead cost of doing business as a chapter 7 trustee, and are estimated, as are the costs of record retention and destruction, and of "Offsite Review" of the TFR and TDR. The "claims register" expense is unexplained, however the court notes that other trustees' applications for expenses do not include such an expense. The $30.53 Expense item listed as [C] "COPIES" was explained in the Supplemental Declaration as the Trustee's *estimate* of the number of copies that were made for internal purposes in the

/ / /

/ / /

---

[8]The trustee even expensed the cost of his office space in this manner, adding the monthly costs of his office rent, insurance costs, utilities, cleaning service, and alarm system, dividing the number by the pending asset cases and charging that amount to the case each month the case was open.

[9]The court is holding several applications from this Trustee, that include similar kinds of costs which are not normally included on applications from other chapter 7 trustees, pending resolution of this matter.

7

course of administering the case. Clearly these are problematic on both grounds, as *estimated expenses* and as *office overhead*.

The Expenses requested here are extraordinary when compared to the expenses routinely requested by virtually every other chapter 7 trustee in the Eastern District. Most applications for expenses are in the double, not triple digits. Indeed, many of the applications the court has reviewed from chapter 7 trustees in the Sacramento Division make no request for reimbursement of expenses. A review of recent expense applications pulled at random in equal numbers from all chapter 7 trustees in the Eastern District shows expenses ranging in amounts from $0 (22 of the 130 applications reviewed) to $1,989.90 (Salven). The average expense request in the applications reviewed by this court is $173.43.

**Conclusion.**

The Expenses for which the Trustee requests reimbursement are either estimated, or part of the cost of overhead, or both. In addition, no documentation was submitted in support of any of the expenses. Therefore, the Application as it relates to the Trustee's request for reimbursement of Expenses will be denied.

Dated: July __2__, 2015

W. Richard Lee
United States Bankruptcy Judge

## Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721